**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHIGBO E. OGUERI, *pro se*, | : | |
| | : | |
| *Plaintiff*, | : | |
| v. | : | 2:25-cv-00015 |
| | : | |
| SUGARTOWN WORLDWIDE, LLC, | : | |
| | : | |
| *Defendant*. | : | |

**MEMORANDUM**

## I. INTRODUCTION

On January 3, 2025, *pro se*[1] Plaintiff Chigbo Ogueri (Plaintiff) filed this action with the Court alleging national origin and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Consistent with this Court's Discovery Orders, Defendant Sugartown Worldwide LLC (Defendant) sought leave to file the dispositive motion currently before the Court. Defendant filed its Motion for Summary Judgment on January 23, 2026, and Plaintiff filed his timely response in opposition. For the following reasons, Defendant's Motion is granted.

---

[1] This Court granted Plaintiff's Motion to Appoint Counsel on February 19, 2025. *See* Dkt. 3; Dkt. 11. An attorney from the Court's employment discrimination panel entered their appearance February 26, 2025. Dkt. 12. Appointed counsel subsequently filed a letter with this Court informing it of a conflict preventing her from representing Plaintiff and withdrew her appearance. Dkt. 16. Plaintiff's case was given flagged for appointment for an additional 90 days. None volunteered to represent Plaintiff. Dkt. 17; Dkt. 18.

## II. BACKGROUND

Plaintiff, a Nigerian man, joined the Defendant as a temporary employee in 2017. Joint Statement of Undisputed Facts (JS), at ¶¶ 1-2. In April of 2018, Plaintiff was hired as a full-time E-Commerce Associate. *Id.* at ¶ 4. Plaintiff's national origin and sex were known to Defendant when he was hired. *Id.* at ¶¶ 6, 9.

Defendant maintains an Employee Handbook that includes an equal employment policy (EEO) and a policy against harassment, discrimination, and retaliation. *Id.* at ¶ 15. Defendant's policy against harassment, discrimination and retaliation requires Defendant to "maintain a strict policy prohibiting all forms of unlawful harassment, including sexual harassment and harassment based on gender, national origin, or any other characteristic protected by law." J.S. at ¶ 17

Plaintiff's first EEO Policy infraction related to an incident in 2020 with a Shamika Durham (Durham), a non-Nigerian female co-worker. *Id.* at ¶¶ 23-25. According to Plaintiff, Durham inappropriately grabbed Plaintiff's penis on multiple occasions on the warehouse floor. *Id.*; Pl's Dep. at 116:5-117:13. On one occasion, Plaintiff reported Durham's behavior to his supervisor, Matthew Erb (Erb). J.S. at ¶ 26; Pl.'s Dep. at 117:20-23. Erb escalated the report, and Human Resources (HR) promptly investigated the allegations, interviewing both Plaintiff and Durham about the behavior. J.S. at ¶ 26-27.

The investigation resulted in both Plaintiff and Durham receiving a "final written warning." *Id.* at ¶ 29-30. The substance of the warnings is essentially identical. *See* Dkt. 35-3 (Durham Warning); Dkt. 35-4 (Ogueri Warning). Both

warnings observed that a "common point mentioned during the conversation was that the two associates 'horseplay all of the time.'" *Id.* According to Plaintiff, after HR's involvement the offensive conduct stopped completely. J.S. at ¶ 31. Durham was subsequently terminated for an unrelated infraction. Pl's. Dep. at 18:8-20:1.

Plaintiff's next and final EEO Policy infraction related to certain communications he had with another female employee, Faith Reyes (Reyes), in May of 2024. Plaintiff described observing Reyes in a "bad mood." *Id.* at 142:20-143:2. As the workday progressed Plaintiff decided to ask Reyes if she was ok and Reyes explained that she did not want to share. *Id.* at 143:3-6. A few days later Plaintiff again approached Reyes and stated: "The other day, you looked upset. What really happened to you?" *Id.* at 143:10-12. After some resistance Reyes eventually described being sexually assaulted by a man at her home. JS. at ¶ 35. Plaintiff challenged Reyes' version of events and told her that he would "laugh about [it]." *Id.* at ¶ 38. According to Plaintiff, Reyes was upset with his response to her story of sexual assault and said some disconcerting things about Plaintiff's deceased mother. *Id.* at ¶ 39. Later that same day, a supervisor confronted Plaintiff regarding his response to Reyes' story and stated that the situation was not a laughing matter. *Id.* at ¶ 41

The next day Plaintiff texted Reyes the following:

> … If you are mad because your guest smashed you in your house go and seek therapy and heal. I don't have to feel sympathy for you. You willingly told me about and I can willingly laugh about it because I don't owe you anything. Most of you females in this country are mentally sick especially when there was no father in the house.

J.S. at ¶ 43. According to Plaintiff, the message was meant to be a "warning" for verbally abusing his deceased mother. *Id.* at ¶ 44; Pl.'s Dep. at 38:7-22.

That same day, Reyes reported Plaintiff's message to a supervisor, who advanced the complaint up the supervisory chain. *Id.* at ¶ 46. Two days later, on May 20, 2024, Plaintiff arrived at work but was engaged by two supervisors (Keane and Patrick) who questioned him regarding his side of the story. Plaintiff was sent home for the day pending an investigation into the matter. Pl.'s Dep. at 145:13-18. Upon further investigation, Plaintiff admitted to sending Reyes the text message and explained to Patrick that "in his culture, Ms. Reyes 'got what she deserved' for letting a man into her home." Patrick Aff. At ¶ 7. Ultimately, Plaintiff was terminated on May 21, 2024, for inappropriate behavior and misconduct. *Id.* at ¶ 8. This suit, alleging that Plaintiff was terminated because of national origin and gender, followed.

## III. LEGAL STANDARD

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving under Rule 56 "bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820-821 (3d Cir. 2006) (citations and internal quotation omitted).

The movant's initial burden does not relieve the complainant's obligation to produce evidence that would support a jury verdict. *Anderson,* 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250. "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Brown v. LVNV Funding*, LLC, No. CV 24-6412, 2025 WL 2044174, at *1 (E.D. Pa. July 18, 2025) (Weilheimer, J.) (citing *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992)).

Claims based upon discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, are generally evaluated using the burden shifting

analytic framework established in *McDonnell Douglas Corp. v. Green.*[2] *Williams v. Tech Mahindra (Americas) Inc.*, 70 F.4th 646, 651-652 (3d Cir. 2023). To make a *prima facie* case for discrimination under, a plaintiff must at least be able to prove: "(1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the action occurred under circumstances that raise an inference of unlawful discrimination." *Anderson v. Mercer Cty. Sheriff Dep't*, 815 F. App'x 664, 666 (3d Cir. 2020).

> If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action against the employee. The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action. A plaintiff may demonstrate pretext, and so defeat a motion for summary judgment, by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Jajua v. Diakon Lutheran Soc. Ministries*, 299 F. Supp. 3d 645, 652 (E.D. Pa. 2018) (Rufe, J.) (cleaned up).

## IV. DISCUSSION

---

[2] 411 U.S. 792 (1973).

Plaintiff's Title VII claims are meritless. Concededly, Plaintiff can establish the first three prongs of his *prima facie* case. However, when applying the record evidence to the fourth prong, Plaintiff's claims can advance no further. To adequately plead an inference of discrimination, Plaintiff "must establish some causal nexus between his membership in a protect class and the [adverse employment] decision[.]" *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Stated differently, Plaintiff must advance a plausible theory that Defendant treated him less favorably *because* of his national origin or gender. *Id.* Generally, this is established by way of comparator evidence, evidence of similar discrimination of other employees, or direct evidence of discriminatory statements or actions by employers. *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). Notably, a party's subjective belief that their protected class played a role in the adverse employment action is insufficient to establish an inference of discrimination. *See Sarullo*, 352 F.3d at 798; *Hukman v. Am. Airlines*, Inc., 796 F. App'x 135, 142 (3d Cir. 2019).

Here, Plaintiff argues that "the record contains genuine disputes of material fact and credibility determinations that must be resolved by a jury." Pl's Opp'n at 1 (unpaginated). Plaintiff primarily argues that Defendant treats disputed facts as undisputed and relies on certain affidavits produced by Defendant through discovery.[3] What Plaintiff fails to acknowledge is that he failed to notice any

[3] Plaintiff attached to his Response in Opposition a "Response to Defendant's Joint Statement of Undisputed Facts" and a "Declaration Pursuant to Federal Rule Of Civil Procedure 56(d)." *See* Dkt. 36 (unpaginated). The Court will not belabor the analysis of these filings. Suffice to say that Defendant participated in the production of the Joint Statement (JS) and cannot now claim that certain facts were "[u]ndisputed for background purposes only." *Id.* at 5.

Plaintiff separately claims that Defendant was withholding certain discovery. This Court ruled on Plaintiff's Motion to Compel Discovery on September 10, 2025. *See* Dkt. 27. Discovery has

depositions in this matter. The record consists primarily of evidence produced by Defendant *via* Plaintiff's deposition testimony and affidavits from Defendant employees. The record also consists of certain documents, namely Plaintiff's final written warning and termination letter. Thus, Plaintiff's arguments that certain facts are disputed, absent any discovery or testimony to support those disputes, amount to the same conjecture and speculation prohibited at this stage. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016).

Plaintiff next argues that his treatment as compared to Reyes' is sufficient to draw an inference of discrimination. *See* Pl.'s Opp'n at 2 (unpaginated). In support, Plaintiff insists that he should have been given a warning before his termination, in step with the policy of "progressive discipline" as he understood it. *See id.*; Pl.'s Dep at 46:12-15. Plaintiff argues that Reyes received no discipline for bringing up her personal issue at work, and that difference in treatment is indicative of animus towards him as a Nigerian male.

This argument is undeveloped and wrong. First, to be a legitimate comparator the Third Circuit has observed that:

> "similarly situated" does not mean identically situated, the plaintiff must nevertheless be similar in "all relevant respects. [This] often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, *and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them*.

---

since closed. The correspondence between the parties credibly indicate that Defendant disclosed the personnel files of Reyes and Durham which seem to include offer letters and Durham's disciplinary warning related to the incident with Plaintiff. *See* Dkt. 24-1 at 14 (unpaginated). The Court will not revisit this issue and rests on the reasoning provided in its September 10 Order.

*Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–223 (3d Cir. 2009) (cleaned up) (emphasis added).

As an initial matter the record makes clear that Plaintiff *had* previously received a disciplinary warning related to his interaction with another female employee, Durham. *Id.* at 46:16-47:4. Assuming Plaintiff was correct in his understanding of the Defendant's progressive discipline policy,[4] Defendant would still be entitled to terminate him for his actions based on the prior infraction and warning. Plaintiff fails to provide any explanation as to why Defendant should not be able to take his initial warning in 2020 into consideration with respect to his termination here.

Next, Defendant has no workplace policy preventing employees from bringing up personal issues at work. Patrick Aff. at ¶ 10; Pl.'s Dep. at 103:17-105:21. Accordingly, Plaintiff's "warning text" to Reyes finds no legitimate comparison in any of her actions described in the record. Thus, Plaintiff's assertion that Reyes should have been disciplined for disclosing personal issues *after he solicited* the information from her is not only ironic but does not come close to describing "similar conduct" required by our caselaw. *See Opsantik*, *supra*. Critically, Plaintiff concedes that

---

[4] The only portion of the record suggesting Plaintiff's understanding is correct is his own incoherent self-serving testimony. *See* Pl.'s Dep. at 46:7-15; *see also* Pl.'s Dep. at 103:25-104:16. Plaintiff fails to point to any objective record evidence, including the Employee Handbook, describing "verbal warnings" as part of the progressive discipline process. In fact, the word "verbal" appears twice in the Employee Handbook; both occasions describing prohibition on the sort of unlawful harassment that Defendant will not tolerate. *See* Handbook at ¶ 105 (describing Policy against harassment, discrimination and retaliation). The Employee Handbook also confirms that employment is at-will and that it has "the right to terminate employment at any time, with or without cause." Handbook at ¶ 310.

"some people might see [his text to Reyes] as harras[ment]."[5] *See* Pl.'s Dep. at 38:15-19.

There is simply nothing in the record to suggest that Plaintiff was fired because of his status as a Nigerian male. What the record does indicate is that Plaintiff had a documented workplace history of distasteful interactions with female employees. Presuming Plaintiff had established a *prima facie* case of discrimination, Defendant's legitimate non-discriminatory reasons for terminating Plaintiff are very strong. Conversely, Plaintiff's briefing, and the record, are bereft of any facts describing pretext. *Cf. Meis v. Aria Health Physician Servs.*, 788 F. Supp. 3d 661, 670-671 (E.D. Pa. 2025) (Weilheimer, J.) (holding that as a matter of common sense, where the proffered LNDR is strong, the Court would require equally strong evidence of pretext).

## V. CONCLUSION

Drawing all inferences in favor of Plaintiff, there is no evidence that would support a reasonable jury returning a verdict for Plaintiff. He is unable to establish an inference of discrimination through pattern or practice of direct discrimination. Further, for the reasons stated above, Reyes is not a legitimate comparator under controlling case law, as her alleged conduct is sufficiently distinguishable from Plaintiff's concededly harassing text.

Defendant's motion is granted. An appropriate order will follow.

---

[5] To the extent Plaintiff is arguing that Reyes should have been disciplined for allegedly making comments about his deceased mother, this still would not compare to the gender-based comments made by Plaintiff in his texts for the purposes of establishing a comparator. In any event, Plaintiff does not make this argument in his briefing.

BY THE COURT:

GAIL A. WEILHEIMER, J.

DATED: 7/24/26